ELIZABETH R. COVINGTON, WILLIAM JOHN EVANS, JR., LAURA M. GRIMES, NANCY L. GUTSKE, LONNIE D. HEDRICK, TRACEY S. HEDRICK, LYNN C. HOWELL, NANCY L. HUGHES, WILLIAM J. HUGHES, DORIS B. SEYMOUR, DAVID P. TRUEBLOOD, JACOB VAN KRETSCHMAR, AND TERESA VAN KRETSCHMAR, APPELLEES v. THE TOWN OF APEX; CLARICE D. ATWATER, MICHAEL JONES, EVERETT M. EDWARDS, JR. AND JACK H. KERLEY, AS MEMBERS OF THE TOWN OF APEX BOARD OF COMMISSIONERS; AND C&D INVESTMENT COMPANY, INC., APPELLANTS

No. 9110SC930

(Filed 15 December 1992)

1. **Municipal Corporations § 30.11 (NCI3d)— conditional use zoning—summary judgment—plaintiffs' forecast of evidence opposing zoning**

Plaintiffs provided sufficient evidence that a zoning change from Office and Institutional to Conditional Use Business-2 was unreasonable, arbitrary, and not in the public interest where the rezoning was sought to permit electronic assembly by a prospective tenant; defendants supported their motion for summary judgment by providing affidavits which identified the public purposes of the rezoning ordinance; one affidavit stated that the rezoning ordinance serves legitimate public purposes in that it contributes to the revitalization of downtown, promotes economic stability, and serves to promote the express statutory goal of conserving the value of buildings; plaintiffs' pleadings and supporting affidavits showed that the owners of the property voluntarily terminated their lease with their former tenant in order to execute a lease with a new tenant, which required that the property be rezoned because its line of business involved electronic assembly; the only public in-

terest cited in the petition and the planning administrator's recommendation was "occupancy of a vacant building"; the only benefit to the community provided by the amended rezoning ordinance was aesthetic in that the prospective tenant would have to provide streetscaping for the general area around the property; there is no indication that the enactment of the amended ordinance without the creation of jobs, services or other benefits would revitalize downtown or provide economic stability to the community; plaintiffs provided supporting materials illustrating the lack of effort by the owners to find other tenants that could have leased the building and helped to conserve its value without rezoning the tract; and the express statutory goal of conservation of buildings could have been accomplished without the rezoning necessary to accommodate the prospective tenant.

**Am Jur 2d, Zoning and Planning § 609.**

2. **Municipal Corporations § 30.9 (NCI3d) — rezoning petition — spot zoning — no reasonable basis**

The trial court correctly granted plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment on the contention that a conditional use zoning constituted spot zoning where plaintiffs used zoning maps to show that the subject tract is surrounded by a vast majority of property zoned either Residential-6 or Office and Institutional; the two isolated pockets of property zoned Business-1 and Business-2 were both surrounded by Residential-6 and Office and Institutional zoning at the time they were implemented; and those properties are themselves examples of spot zoning. There was no reasonable basis for the spot zoning in that the tract is a single rectangular lot, 100' × 275' with a one story masonry building containing 3,780 square feet of net interior floor space and surrounded by residences on three sides; although this property is zoned Conditional Use Business-2 with the same features as Office & Institutional, the uses to be employed are industrial in nature and the amended zoning ordinance is in direct contravention of its comprehensive zoning plan; the only benefit to the community is one of an aesthetic nature; no jobs will be created by the zoning change nor services provided which would specifically benefit the community; the detriment to the community would be the placement of an industrial use in an area where the property is

used for residential and professional purposes; there was no community support for the change and sixty residents signed a petition in opposition to the change; and the use envisioned by the new tenant is a drastic change from the uses already present in the surrounding area.

**Am Jur 2d, Zoning and Planning §§ 147-152.**

**Spot zoning. 51 ALR2d 263.**

Appeal by defendants from judgment entered 7 June 1991 by Judge Donald W. Stephens, in Wake County Superior Court. Heard in the Court of Appeals 23 September 1992.

*Grimes and Teich, by S. Janson Grimes, for plaintiffs-appellees.*

*Holleman and Stam, by Henry C. Fordham, Jr., for defendants-appellants.*

JOHNSON, Judge.

On 26 March 1990, C&D Investment Company, Inc. (hereinafter C&D) petitioned the Town of Apex to rezone the property located at 212 S. Salem Street, Apex, N.C. from Office & Institutional-1 to Conditional Use Business-2. The rezoning was sought to permit electronic assembly by a prospective tenant, A&E Electronic, Inc. (hereinafter A&E), within the former post office building located on the subject property.

The subject property is bordered by property zoned as follows: to its immediate north by property zoned Office & Institutional-1; to its immediate east by property zoned Business-1; to its immediate southeast by property zoned Business-2; to its immediate south by property zoned Office & Institutional-1; and to its immediate west by property zoned Residential-6.

On 7 May 1990, the Apex Planning Board held a public hearing on the rezoning application. The Apex Planning Director, David Rowland, recommended approval of the rezoning petition in his memorandum given to the Planning Board and Board of Commissioners. On 4 June 1990, the Planning Board voted 5-2 to recommend approval of the rezoning.

On 10 May 1990, several persons, including Donald W. Grimes who resides next to the subject property, submitted a valid protest petition to the Town of Apex. The Apex Board of Commissioners

held public hearings on 15 May 1990 and 5 June 1990. After hearing the testimony, the board voted 4-1 to amend the zoning ordinance to rezone the subject property to a Conditional Use Business-2 district with the condition that use of the tract be restricted to the uses permitted in Office and Institutional-1 plus the use of electronic assembly. The mayor executed the ordinance effecting the rezoning on 19 June 1990. Plaintiffs instituted this action.

Plaintiffs filed suit in the Superior Court of Wake County. After defendants answered denying plaintiffs' allegations, plaintiffs filed a motion for summary judgment. Defendants also filed a motion for summary judgment. The Honorable Donald W. Stephens, Superior Court Judge, granted plaintiffs' motion and denied defendants' motion. Defendants, the Town of Apex and the named commissioners, gave timely notice of appeal.

On appeal, defendants bring forth two assignments of error. Defendants first contend that they were entitled to summary judgment as a matter of law because plaintiffs did not make a "sufficient showing" to defendants' motion and supporting materials. Defendants also contend that plaintiffs failed to establish as a matter of law that the Town of Apex's legislative act of rezoning the "subject tract" was illegal entitling plaintiffs to summary judgment. The two assignments of error will be addressed simultaneously.

[1] Summary judgment is proper only when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *Little v. National Service Industries Inc.*, 79 N.C. App. 688, 690, 340 S.E.2d 510, 512 (1986). By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial or be able to surmount an affirmative defense. *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981). A plaintiff need not present all the evidence in his favor but only that necessary to rebut the defendant's showing that an essential element of his claim is nonexistent or that he cannot surmount an affirmative defense. *Id.*

"Zoning, as a definitional matter, is the regulation by a local governmental entity of the use of land within a given community, and of the buildings and structures which may be located thereon." *Chrismon v. Guilford County*, 322 N.C. 611, 617, 370 S.E.2d 579, 583 (1988). "A county's legislative body has authority to rezone when reasonably necessary to do so in the interests of the public

health, safety, morals or general welfare; ordinarily the only limitation upon this authority is that it may not be exercised arbitrarily or capriciously." *Nelson v. Burlington*, 80 N.C. App. 285, 287, 341 S.E.2d 739, 740-41 (1986). "A duly adopted zoning ordinance is presumed to be valid, and the burden is upon the plaintiff to establish its invalidity." *Id.*

In the case *sub judice*, the Town of Apex enacted a conditional use zoning ordinance. The practice of conditional use zoning, when carried out properly, is an approved practice in North Carolina. *Chrismon*, 322 N.C. at 622, 370 S.E.2d at 586. "In order to be legal and proper, conditional use zoning, like any type of zoning, must be reasonable, neither arbitrary nor unduly discriminatory, and in the public interest." *Id.*

Defendants supported their motion for summary judgment by providing affidavits which identified the public purposes of the rezoning ordinance. Mr. David Rowland's affidavit stated that the rezoning ordinance serves legitimate public purposes in that it contributes to the revitalization of downtown, it promotes economic stability, and it serves to promote the express statutory goal of conserving the value of buildings.

Plaintiffs' pleadings and supporting affidavits showed that C&D, the owners of the subject property, voluntarily terminated their lease with their former tenant, the postal service, in order to execute a lease with A&E. Because A&E's line of business involved electronic assembly, the property had to be rezoned in order to permit use of the property by A&E. C&D, with the execution of the lease, would realize a $10,000.00 increase in rental profits, and A&E would pay less money in rent for more space. When they executed the lease agreement, A&E was under a present lease until the year 1993 in an area zoned for light industry. C&D, in order to effectuate the lease agreement, petitioned the Town of Apex for a zoning change.

The only public interest cited in the petition and in the Town of Apex's Planning Administrator's recommendation was "occupancy of a vacant building." No other explanation was provided for a zoning change that would implement an industrial use into a neighborhood heavily populated by residential dwellings.

Plaintiff also showed that the enactment of the zoning ordinance would produce minimal benefit to the community. The only

benefit to the community provided by the rezoning ordinance was aesthetic in nature in that the prospective tenant would have to provide streetscaping for the general area around the property.

No jobs were to be created by the zoning change. In fact, Ann Sears, president of A&E, stated in her deposition that she did not intend to increase her staff. No services or other benefits were to be provided for the community by the implementation of the zoning change. There is no indication that the enactment of the zoning ordinance without the creation of jobs, services or other benefits would revitalize downtown or provide economic stability to the community.

A fact more suggestive of the unreasonableness and arbitrariness of the rezoning ordinance was the lack of effort by the owners to find other tenants that could have leased the building and helped to conserve its value without rezoning the subject tract. Plaintiffs provided supporting materials illustrating that fact.

Mr. Billy Johnson, owner of Apex Realty, indicated in his affidavit that he advertised the property for two weeks and had six to seven inquiries concerning the subject tract. Mr. Johnson's activities were on behalf of the tenant, the postal service. After Mr. Johnson informed the postal service that he had a potential tenant (other than A&E) ready, willing, and able to sub-lease the premises, he determined that the postal service would or could not pay a real estate commission. He then contacted one of the owners, an attorney, who advised Mr. Johnson that he wanted to terminate the lease with the postal service since the property was capable of producing higher rents. The affidavit of Mr. Dixon, president of C&D, does indicate that a law firm contacted him about purchasing the building, but the deal never materialized. The affidavits of Mr. Johnson and Mr. Dixon indicate that potential tenants were interested in the subject tract. The express statutory goal of conservation of buildings could have been accomplished without the rezoning necessary to accommodate the prospective tenant, A&E. We, therefore, conclude that plaintiffs provided sufficient evidence that the zoning change from Office & Institutional to Conditional Use Business-2 was unreasonable, arbitrary, and not in the public interest.

[2] Defendants also argue that plaintiffs failed to present sufficient evidence that the conditional use zoning enacted constituted spot zoning. We disagree.

**COVINGTON v. TOWN OF APEX**

[108 N.C. App. 231 (1992)]

"In this case and indeed in any spot zoning case in North Carolina courts, two questions must be addressed by the fact finder: (1) did the zoning activity in the case constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning." *Chrismon*, 322 N.C. at 625, 370 S.E.2d at 588.

The North Carolina Supreme Court has defined spot zoning as

A zoning ordinance, or amendment which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned . . . so as to relieve the small tract from restrictions to which the rest of the area is subjected is called spot zoning.

*Dale v. Town of Columbus*, 101 N.C. App. 335, 338, 399 S.E.2d 350, 352 (1991); *see Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E.2d 35 (1972).

An essential element of spot zoning is a small tract of land owned by a single person and surrounded by a much larger area uniformly zoned. Plaintiffs' supporting materials showed that the parcel of land was a small rectangular lot, 100' × 275' in size, and owned by a single owner, C&D. They also presented materials which showed that the vast majority of the land surrounding the subject tract is uniformly zoned.

The Court of Appeals, in *Mahaffey v. Forsyth County*, 99 N.C. App. 676, 394 S.E.2d 203 (1990), *aff'd*, 328 N.C. 323, 401 S.E.2d 365 (1991), stated that a tract must be examined relative to the vast majority of the land immediately surrounding it, not just a small isolated pocket of property. The vast majority of the land in *Mahaffey* was zoned Residential-5 and Residential-6 while property 700 feet down the highway was zoned Business-1. The Court found that the property zoned Business-1 was an isolated pocket of spot zoning and held that the vast majority of the property surrounding the subject tract, absent the isolated pocket of spot zoning, was uniformly zoned. *Mahaffey*, 99 N.C. App. at 681, 394 S.E.2d at 206.

In the case *sub judice*, plaintiffs used zoning maps to show that the subject tract is surrounded by a vast majority of property zoned either Residential-6 or Office & Institutional. Property adjacent to the subject tract is zoned Business-1 and Business-2. The two isolated pockets of property zoned Business-1 and Business-2,

at the time they were implemented, were both surrounded by Residential-6 and Office & Institutional zoning. The properties zoned Business-1 and Business-2 are themselves examples of spot zoning. On the basis that the property is surrounded by property uniformly zoned Residential-6 and Office & Institutional, the zoning ordinance enacted by the Town of Apex is spot zoning as defined by the North Carolina Courts.

The North Carolina Supreme Court, however, has established that spot zoning is not invalid per se. *Chrismon*, 322 N.C. at 627, 370 S.E.2d at 589. If there is a reasonable basis for the spot zoning in question, then the spot zoning is legal and therefore valid. "The practice [of spot zoning] is not invalid per se but is beyond the authority of the municipality or county and therefore void only in the absence of a reasonable basis." *Id.*

The North Carolina Supreme Court has enumerated several factors that are relevant to a showing of the existence of a sufficient reasonable basis for spot zoning.

1. The size of the tract in question.

2. The compatibility of the disputed action with an existing comprehensive zoning plan.

3. The benefits and detriments for the owner, his neighbors and the surrounding community.

4. The relationship of the uses envisioned under the new zoning and the uses currently present in adjacent tracts.

*Chrismon*, 322 N.C. at 628, 370 S.E.2d at 389.

The first factor is the size of the tract in question. Plaintiffs provided evidence that the tract is a single rectangular lot, 100′ × 275′ in size, with a one-story masonry building containing 3,780 square feet of net interior floor space. The lot is surrounded by residences on three sides and is uniformly zoned Residential-6 and Office & Institutional.

The second factor is the compatibility of the disputed action with an existing comprehensive zoning plan. "Zoning generally must be accomplished in accordance with a comprehensive plan in order to promote the general welfare and serve the purpose of the enabling statute. *Alderman v. Chatham County*, 89 N.C. App. 610, 615-16, 366 S.E.2d 885, 889, *disc. review denied*, 323 N.C. 171,

373 S.E.2d 103 (1988). The North Carolina General Statutes § 153A-341 (1983) addresses this issue:

> Zoning regulations shall be made in accordance with a comprehensive plan[.] The regulations shall be made with reasonable consideration as to, among other things, the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land through the county. . . .

In the present case, a comprehensive zoning plan entitled 2010 Land Use Plan was adopted on 5 December 1989. The plan lists several guidelines for future development in the Town of Apex. The two that are relevant to this appeal are the following: (1) Use buffer areas and transitional zoning to protect adjacent existing residential development and (2) Industrial uses should be located adjacent to or near the major railroad corridors and away from residential areas. The 2010 Land Use Map also provides that South Salem Street should continue to be zoned and developed for Office & Institutional uses to provide a transition between residential and more intensive uses. Although the property is zoned Conditional Use Business-2 with the same features as Office & Institutional, the uses to be employed are industrial in nature. The Town of Apex enacted a zoning ordinance in direct contravention of its comprehensive zoning plan.

> The third relevant factor is the benefits and detriments to the owner, his neighbors and the surrounding community.

> The standard is not the advantage or detriment to particular neighboring landowners, but rather the effect upon the entire community as a social, economic and political unit. That which makes for the exclusive and preferential benefit of such particular landowner, with no relation to the community as a whole, is not a valid exercise of this sovereign power.

*Chrismon*, 322 N.C. at 629, 370 S.E.2d at 590, citing *Mansfield & Swett, Inc. v. West Orange*, 120 N.J.L. 145, 150, 198 A. 225, 233 (1938). The benefits to the owner are monetary in nature. When C&D leased the premises to the postal service in December 1989, the rent was $8,000.00 per year. The lease between C&D and A&E, dated 1 June 1990, fixed the rent at $18,000.00 per year. By leasing the premises to A&E, C&D will receive a $10,000.00 increase in rental profits. C&D will also benefit from the special conditions

of the permit which required additional streetscaping to be per-
formed by the tenant around the subject property. The zoning
change presents no detriment to C&D.

The only benefit to the community provided by the zoning
change is one of an aesthetic nature. Again, the prospective tenant,
in accordance with the conditions listed in the zoning ordinance,
is obligated to perform streetscaping around the premises. No jobs
will be created by the zoning change nor services provided which
would specifically benefit the community. The main detriment to
the community would be the placement of an industrial use in
an area where the property is used for residential and professional
purposes.

In *Chrismon*, the Court considered the community's support
of the rezoning ordinance in order to assess the benefit of the
zoning change to the community. In the case *sub judice*, there
was no support for the purported zoning change. In fact, sixty
Apex residents signed a protest petition in opposition to the pro-
posed zoning change.

The final factor listed by the *Chrismon* Court in determining
whether or not a reasonable basis exists for spot zoning focuses
on the compatibility of the uses envisioned in the rezoned tract
with the uses already present in adjacent tracts. The use envisioned
under the new zoning change is electronic assembly. Present uses
of property surrounding the subject tract include: residential dwell-
ings on three sides, medical offices, a bank, a pharmacy and a
jewelry store.

Plaintiffs correctly contend that the use envisioned by A&E
is a drastic change from the uses already present in the surrounding
area. Electronic assembly is manufacturing which is totally dif-
ferent from the various uses that are already present in the sur-
rounding areas. Ann Sears, president of A&E, stated in her
deposition that at various times automobiles, vans and tractor trailer
trucks would create a flow of traffic in and out of the premises.
This type of activity would totally destroy the tenor of the basically
residential and professional area. In *Chrismon*, the Court declared
that "rezoning of a parcel in an old and well established residential
district to a commercial or industrial district would be clearly objec-
tionable." 322 N.C. at 631, 370 S.E.2d at 391.

For the foregoing reasons, the trial court correctly granted the plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment. Accordingly, we

Affirm.

Judges EAGLES and PARKER concur.