ELMORE, Judge.
*281 The County of Rockingham (defendant) appeals the denial of its summary judgment motion and the entry of summary judgment in favor of Good Neighbors of Oregon Hill *904 Protecting Property Rights and Ashley M. Wyatt (plaintiffs). After careful consideration, we reverse and remand for further proceedings.
I. Background
The facts relevant to this appeal are as follows: On 10 August 2012, Philip M. Behe (aka "Matt Behe") and his father, Philip L. Behe[1] , purchased through North Carolina Special Warranty Deed the property located at 403 Live Oak Road in Reidsville. The property consisted of a 101.76 acre tract, and Matt Behe wished to subdivide approximately two acres out of the parent tract for a kennel to be used as a bird-dog training facility. Matt Behe owns Rocky River Gun Dogs, LLC, which has trained world and national championship bird dogs. On 5 September 2012, Matt Behe and his wife, Megan Behe, filed an application with Rockingham County to rezone the two-acre tract from Residential Agricultural to Highway Commercial-Conditional District.
The Rockingham County Planning Staff issued a report, Case # 2012-016, recommending a request for rezoning from Residential Agricultural to Highway Commercial-Conditional District, with the following nine conditions:
1. All development shall proceed in accordance with the site plan, including applicant submitted materials, and any changes may require a Site Plan Amendment.
2. The applicant is responsible for obtaining and complying with all required permits and approvals.
3. The Applicant shall use Best Management Practices for any additional grading and erosion control as shown in either the (USDA-Natural Resources Conservation Service Field Office Technical Guide ) or the (NC Erosion and Sediment Control Planning and Design Manual ).
4. A Type I landscape buffer, either planted or existing, must be maintained in a healthy manner along all property *282 lines adjoining residentially zoned properties. A chain link fence with slats providing 90% coverage is acceptable as a type I visual buffer. The landscaping or buffer must be installed within one year of the date of the Certificate of Occupancy for the building.
5. Lighting fixtures shall be full cut-off or shoebox type fixtures and shall be aimed and shielded in a manner that would not direct illumination on adjacent properties.
6. The required Parking shall be calculated at one (1) space per 400 sq. ft. of gross floor area.
7. Prior to operation of the business, the applicant shall contact the North Carolina Department of Transportation to determine if a commercial driveway permit is needed. The applicant shall provide the Planning Department with a copy of the commercial driveway permit or a letter from the North Carolina Department of Transportation stating a permit is not needed.
8. Applicant must dispose of all wastes in accordance with the applicable federal, state, and local regulations.
9. Within 60 days of approval of the rezoning request, a minimum 30,000 square feet lot shall be subdivided from the parent tracts according to the site plan provided by the applicant.
On 8 July 2013, the Rockingham County Planning Board (Planning Board) voted 6-4 in favor to rezone approximately 1.9 acres of the 101.76 tract from Residential Agricultural to Highway Commercial-Conditional District for a kennel dog training facility. On 5 August 2013, the Rockingham County Board of Commissioners (BOC) approved the zoning amendment, with a 4-1 vote. In the BOC's rezoning order, it included the nine conditions listed above that were recommended by the Planning Staff.
On 24 October 2013, plaintiffs sought a preliminary injunction and a declaratory judgment in superior court that the rezoning ordinance adopted by the BOC was void and of no legal effect. Plaintiffs alleged four claims: (1) the rezoning constituted illegal spot zoning; (2) defendant failed to comply with statutory requirements; (3) defendant failed to comply with requirements of the *905 zoning ordinance; and (4) defendant's decision to rezone the property was arbitrary and capricious and is therefore void and of no effect. *283 On 26 November 2013, defendant denied each allegation outlined in plaintiffs' four claims. The parties filed cross-motions for summary judgment. While the case was pending, Matt Behe, Megan Behe, Philip L. Behe, and his wife, Cheryl Behe, transferred ownership of the 403 Live Oak Road property to Rocky River Gun Dogs, LLC through a North Carolina General Warranty Deed in April 2014.
On 14 November 2014, the trial court granted plaintiffs' motion for summary judgment. In its order, the trial court listed thirteen points to justify its holding, none of which were identified as findings of fact or conclusions of law. The final point in the order stated:
13. The re-zoning decision was not shown to be in compliance with the local zoning ordinance and the state enabling statutes in the following respects:
a) Among the Commercial Rezoning Site Plan Requirements is III, which requires the Applicant to make a good faith effort to meet with the owners of neighboring properties to discuss the application by requiring him to arrange a date for the meeting and mailing written notice to all properties within 250 feet of the property proposed to be rezoned. The record does not reveal where the Applicant complied with this requirement.
b) The Report, pages 8 and 9, summarizes the testimony of several so described owners of parcels of land abutting that parcel of land for which re-zoning was being sought did not receive notification as provided by Chapter 153A343.
c) The record reveals that the Applicant began excavation and installation of the structure intended for use under the rezoning before securing the zoning permit from the defendant as specifically prohibited under the Zoning Ordinance at Section 15-2(a).
Defendant timely appealed to this Court on 25 November 2014.
II. Analysis
a.) Illegal Spot Zoning
We must determine whether the trial court erred in granting plaintiffs' motion for summary judgment and denying defendant's motion for summary judgment. As a threshold matter, defendant argues *284 for the first time on appeal that, as a matter of law, the rezoning of the two-acre tract does not involve spot zoning. We agree.
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) ). This is a proper case for summary judgment as "there is no substantial controversy as to the facts disclosed by the evidence. The controversy is as to the legal significance of those facts." Blades v. City of Raleigh, 280 N.C. 531, 545, 187 S.E.2d 35, 43 (1972).
Our Supreme Court has defined spot zoning as:
A zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected[.]
Id. at 549, 187 S.E.2d at 45 (emphasis added). In North Carolina, " 'spot zoning' is a descriptive term merely, rather than a legal term of art, and [ ] spot zoning practices may be valid or invalid depending upon the facts of the specific case." Chrismon v. Guilford Cnty., 322 N.C. 611, 626, 370 S.E.2d 579, 588 (1988). As such, "the practice is not invalid per se but, rather, [ ] it is beyond the authority of the municipality or county and therefore void only in the absence of a clear showing of a reasonable basis therefor." Id. at 627, 370 S.E.2d at 589 (internal quotation and citation omitted) (emphasis in original).
*906 In every alleged spot zoning case, our courts apply a two-part test in order to determine if the spot zoning is lawful. Specifically, the trial court must consider "(1) did the zoning activity in the case constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning." Id. In analyzing the second prong of the test, a number of factors are considered, including:
[T]he size of the tract in question; the compatibility of the disputed zoning action with an existing comprehensive zoning plan; the benefits and detriments resulting from the zoning action for the owner of the newly zoned property, *285 his neighbors, and the surrounding community; and the relationship between the uses envisioned under the new zoning and the uses currently present in adjacent tracts.
Id. at 628, 370 S.E.2d at 589.
This Court has previously stated: "An essential element of spot zoning is a small tract of land owned by a single person and surrounded by a much larger area uniformly zoned." Musi v. Town of Shallotte, 200 N.C.App. 379, 383, 684 S.E.2d 892, 895 (2009). When applying the above test in a spot zoning case, the burden is on the zoning authority to show that the spot zoning is lawful, see Chrismon, 322 N.C. at 628, 370 S.E.2d at 589, whereas in an ordinary zoning case, "[t]he burden is on the complaining party to show [the zoning change] to be invalid" and "[a] duly adopted zoning ordinance is presumed to be valid." Graham v. City of Raleigh, 55 N.C.App. 107, 110, 284 S.E.2d 742, 744 (1981). Accordingly, the question of whether a zoning change constitutes spot zoning is relevant because the burden of proof shifts depending on the determination.
In the parties' cross-motions for summary judgment, each party stipulated that this was a spot zoning case. The trial court found: "The parties spoke without objection as to whether the zoning was spot zoning." However, defendant now argues that the rezoning of the two-acre tract does not involve spot zoning because the parcel was owned by Matt and Philip Behe, as father and son, when the application for the rezoning was filed. Defendant's argument has merit.
In Musi, the plaintiffs tried to bring a spot zoning claim to challenge the rezoning of 15 separate parcels owned by six different owners from the same extended family despite the "common owner" requirement for spot zoning. Musi, 200 N.C.App. 379, 383, 684 S.E.2d at 895. The plaintiffs cited three cases in support of their proposition, none of which this Court found to be persuasive. "Two of these, Alderman v. Chatham County, 89 N.C.App. 610, 366 S.E.2d 885 (1988) ; and Lathan v. Bd. of Commissioners, 47 N.C.App. 357, 267 S.E.2d 30 (1980), involved the rezoning of property with a common owner, and thus shed no light on this issue." Id. at 383, 684 S.E.2d at 895.
Specifically, Alderman involved a parcel owned by a husband and wife, which this Court concluded met the common owner requirement for spot zoning. Alderman, 89 N.C.App. at 617, 366 S.E.2d at 889-90. The second case, Lathan, concerned a parcel owned by the "Keith Nesbitt family," which this Court impliedly determined, without discussion, *286 also met the common owner requirement for spot zoning. Lathan, 47 N.C.App. at 357, 267 S.E.2d at 30. The third case, Budd v. Davie Cnty., involved the rezoning of a tract of land owned by a mother and a strip of land running from the tract owned by her son. Budd v. Davie County, 116 N.C.App. 168, 170, 447 S.E.2d 449, 450-51 (1994). Despite the fact that the tract of land and the strip of land were separately owned by a mother and her son, the Budd Court held that the rezoning met the common owner requirement for spot zoning. Id. at 174, 447 S.E.2d at 452. Accordingly, the plaintiffs in Musi argued that Budd was analogous to their case and was controlling.
However, the Musi Court was not persuaded, and it declined to extend Budd to permit a spot zoning claim, reasoning:
Firstly, Budd's holding is internally inconsistent. After quoting the same definition of spot zoning given [in Blades, 280 N.C. at 549, 187 S.E.2d at 45 ], and even noting that an "essential element of spot zoning is a small tract of land owned by a single *907 person", the Court then holds that the rezoning in question, involving property with two different owners, was spot zoning.
Musi, 200 N.C.App. at 383, 684 S.E.2d at 895-96. Additionally, the Musi Court noted that in Good Neighbors of South Davidson v. Town of Denton, 355 N.C. 254, 259, 559 S.E.2d 768, 772 (2002), a Supreme Court of North Carolina case decided after Budd, our Supreme Court reiterated the requirement that spot zoning must involve a parcel with one owner. Musi, 200 N.C.App. at 383, 684 S.E.2d at 896. Therefore, "[t]o the extent that Good Neighbors conflicts with Budd, we are bound to follow Good Neighbors. " Id. Accordingly, the Musi Court upheld the trial court's grant of summary judgment in favor of the defendant on the basis that the plaintiffs failed to satisfy the "single ownership" requirement for spot zoning.
Recently, in Wally v. City of Kannapolis, the plaintiffs, while admitting that the rezoned property was owned by two entities, nevertheless argued that the rezoning of the subject parcels was spot zoning. Wally, No. 13-1425, 2014 WL 7472941, at *2-3, (N.C.Ct.App. Dec. 31, 2014). The plaintiffs challenged the Musi holding as being "too vague to be practically applied, [ ] inconsistent with the purpose of the spot zoning doctrine, and produc[ing] inequitable and absurd results[.]" Id. at *3. This Court responded that "those arguments must be presented to the Supreme Court." Id. "Just as Musi was bound to follow Good Neighbors, we are bound to follow Musi. " Id.
*287 In the case before us, the trial court stated:
In the matter sub judice, there is only one particular property owner, Applicant Matt Behe, who is receiving the special benefit of being allowed to narrowly carve out a small portion of the acreage owned by him, namely 2 out of 100 acres, in order to construct and operate a kennel/dog training facility.
The trial court appears to have determined that because Matt Behe is the sole owner receiving a special benefit, this is a spot zoning case. However, the definition of spot zoning requires a single owner of property, not a single person benefitting from the rezoning. Regardless, the tract of land in question was not owned by a single person when the application for rezoning was filed and when the BOC made its determination, rather it was jointly owned by Philip Behe and Matt Behe. Accordingly, as we too are bound to follow Musi and Good Neighbors, we hold that the rezoning did not constitute spot zoning as our courts have defined it.
The record shows that the BOC rezoned the two-acre tract from Residential Agricultural to Highway Commercial-Conditional District specifically to allow a kennel/dog training facility to operate as a permitted use on the land. This rezoning is classified as conditional use zoning. Chrismon, 322 N.C. at 618, 370 S.E.2d at 583 (citation omitted). " 'In order to be legal and proper, conditional use zoning, like any type of zoning, must be reasonable, neither arbitrary nor unduly discriminatory, and in the public interest.' " Covington v. Town of Apex, 108 N.C.App. 231, 235, 423 S.E.2d 537, 539 (1992) (quoting Chrismon, 322 N.C. at 622, 370 S.E.2d at 586 ). Again, the burden would be on the complaining party to show the zoning change to be invalid.
In their motion for summary judgment, plaintiffs argued that the rezoning was, among other things, unlawful, invalid, and void in that it was arbitrary and capricious, vague, and discriminatory. As such, the trial court was charged with reviewing the whole record to discern whether the BOC's determination was supported by evidence showing a reasonable basis for the zoning change.
In reviewing the whole record, the trial court "is not the trier of fact but rather sits as an appellate court and may review both (i) sufficiency of the evidence presented to the municipal board and (ii) whether the record reveals error of law." Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjust., 334 N.C. 132, 136, 431 S.E.2d 183, 186 (1993) (citations omitted). "It is not the function of the reviewing court, in such *288 a proceeding, to find the facts but to determine whether the findings of fact made by the Board are supported by the evidence before the Board." Application of Campsites Unlimited, Inc., 287 N.C. 493, 498, 215 S.E.2d 73, 76 (1975) ; *908 see Lambeth v. Town of Kure Beach, 157 N.C.App. 349, 353, 578 S.E.2d 688, 691 (2003). Notably, "[t]he trial court, when sitting as an appellate court, to review a [decision of a quasi-judicial body], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." Mann Media, Inc. v. Randolph Cnty. Planning Bd., 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (holding "[w]hen the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test"). The trial court examines the whole record to determine whether the Board's decision is supported by competent, material, and substantial evidence. Id. at 14, 565 S.E.2d at 17. In doing so, "the trial court may not weigh the evidence presented to the agency or substitute its own judgment for that of the agency." Cumulus Broadcasting, LLC v. Hoke Cnty. Bd. of Comm'rs, 180 N.C.App. 424, 426, 638 S.E.2d 12, 15 (2006) (citation and quotation omitted). Questions of law are reviewable de novo. Id.
Further, it is inappropriate for the trial court's order to contain detailed findings of fact and conclusions of law in a case decided upon a summary judgment motion. War Eagle, Inc. v. Belair, 204 N.C.App. 548, 551-52, 694 S.E.2d 497, 500 (2010) ; see N.C. Gen.Stat. § 1A-1, Rule 56 (2013). "The purpose of the entry of findings of fact by a trial court is to resolve contested issues of fact. This is not appropriate when granting a motion for summary judgment" because "the basis of the judgment is that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Id. (quotation and citation omitted). "By making findings of fact on summary judgment, the trial court demonstrates to the appellate courts a fundamental lack of understanding of the nature of summary judgment proceedings." Id. at 552, 694 S.E.2d at 500. It is only appropriate for the trial court to recite those "uncontested facts" that form the basis of its decision. Id. "[A]ny findings should clearly be denominated as 'uncontested facts' and not as a resolution of contested facts." Id.
Although not specifically designated as findings of fact, it is clear that the thirteen numbered paragraphs in the trial court's order operate as such (# 13 also operates as a conclusion of law). However, the order lacks any statement that findings were of "uncontested facts." This is likely because at least two of the trial court's findings were clearly *289 not restatements of uncontested facts, but were statements weighing the evidence.
In its order, the trial court found:
11. There is a strong potential for noxious odors fouling the air, as well as sanitation issues; noise; increased traffic; the loss of the use and enjoyment of their property; the loss of property values; and, interference with their health, safety and general welfare. Some of these issues were not even addressed by the County or by the Applicant, e.g., the noise and health hazards associated with discharge of weapons involved in dog training activities, and the use of and disposal of birds involved in dog training activities.
12. The property was rezoned without any consideration of: (a) the impact upon the health, safety, and welfare on surrounding property owners of utilizing live birds in the training of the bird dogs; (b) the impact upon the health, safety, and welfare on surrounding property owners of utilizing and discharging firearms in the training of the bird dogs, including, the environmental impact of lead residue; (c) whether the use being contemplated by the Applicant for re-zoning was actually similar to the permitted use of a kennel, given the use as described was much different than the generally accepted definition of a kennel, being simply a location where dogs are housed on a temporary basis (the Court, noting that such a finding that the intended use was not sufficiently similar to any permitted use to treat it like the permitted use, would have required a determination that such use was prohibited, pursuant Section 8-4 of the Rockingham County Zoning Ordinance), [ ] (d) the need for protection to adjoining property; (e) the effects of the kennel/dog training use on property values; (f) general health, safety *909 and general welfare and (g) benefits to the neighbors and the surrounding community.
In making these findings, the trial court has substituted its own judgment for that of the BOC. This is quite evident in finding 11, where the trial court states: "Some of these issues were not even addressed by the County[.]" The trial court's sole charge was to review the BOC's decision to see if it was supported by the evidence-it was not to weigh the evidence presented by one party (but not addressed by the other party) and then make a finding that there is "a strong potential" for certain *290 negative outcomes if the zoning change is upheld. Further, several of the statements contained in finding 12 are unsupported by the record evidence. For example, there is evidence that the BOC considered the effect of the zoning change on surrounding property values by hearing evidence pertaining to environmental concerns-including lead-and noise concerns from gunfire and barking. It was blatantly incorrect for the trial court to assert that the property was rezoned "without any consideration of the above factors."
In its summary judgment order, the trial court did not set forth its standard of review; it weighed the evidence; and it substituted its judgment for that of the BOC (and this is not a spot zoning case). As such, we believe the trial court lacked a fundamental understanding of the nature of a summary judgment proceeding, and we are confident that the summary judgment order should not be upheld. However, we do not have sufficient evidence before us to determine if summary judgment should have been granted in defendant's favor. There is no transcript of the summary judgment proceeding in the record, and, thus, we have only an invalid summary judgment order before us for our review. We must reverse the trial court's order and remand for a new summary judgment hearing.
b.) Lack of Proper Notice of Public Hearing on the Rezoning Amendment
Defendant argues that the trial court erred in concluding that there was no genuine issue of material fact that certain abutting property owners did not receive notice of the BOC's hearing as required by statute. We agree. Because this issue is likely arise on remand, we believe judicial economy is best served by addressing it on appeal.
Plaintiffs alleged in their complaint that defendant failed to notify all of the abutting landowners of the public hearing and failed to certify to the BOC that notice had been mailed to property owners in violation of N.C. Gen.Stat. § 160A-384(a).
We first note that N.C. Gen.Stat. § 160A-384(a) is applicable only in hearings placed before a city council, which is not what we have before us. N.C. Gen.Stat. § 153A-343 (2013) is the statute that outlines the notice requirement for hearings before the BOC. N.C. Gen.Stat. § 153A-343 requires the person or persons who mailed the notice of public hearing to all eligible property owners to certify to the BOC that the notifications were sent. N.C. Gen.Stat. § 153A-343(a). It further states that "such certificate shall be deemed conclusive in the absence of fraud." Id.
*291 Here, Stacy Tolbert, Secretary to the Rockingham County Planning Board, certified to the BOC that she sent a Notice of Public Hearing on 28 June 2013 to thirty-three residences, including Ashley Wyatt's (Wyatt) and Keith Neal's (Neal), who both contend that they did not receive proper notice. The certification stated: "The following parties and abutting property owners to the application for Rezoning Case # 2012-016 were forwarded legal notice by first class mail on June 28, 2013." Plaintiffs have not alleged any fraud in the mailing of the notices on the part of the County. In the absence of fraud, Ms. Tolbert's certification is deemed conclusive that defendant complied with the notice requirements. See Rakestraw v. Town of Knightdale, 188 N.C.App. 129, 135, 654 S.E.2d 825, 829 (2008). Accordingly, the trial court erred in concluding that there was no genuine issue of material fact that defendant failed to comply with the statutory notice requirement. The opposite is true-the record shows that notice was served to all proper parties in a timely fashion and properly certified to the BOC. Further, we note that Wyatt and Neal attended *910 both the planning board meeting and the hearing before the BOC despite their claims.
c.) Section 15-2 of the Zoning Ordinance
Defendant argues that the trial court erred in concluding that there was no genuine issue of material fact that Matt Behe violated Section 15-2(a) of the Zoning Ordinance by pouring a concrete pad on the two-acre tract for use by his personal dogs prior to submitting his rezoning application. We agree.
We note that plaintiffs' complaint fails to allege a violation of Section 15-2(a) of the Zoning Ordinance in their motion for declaratory judgment. Nonetheless, the trial court has included Matt Behe's purported violation of this section as part of its basis for the summary judgment award in favor of plaintiffs. The trial court's order provides: "The record reveals that the Applicant began excavation and installation of the structure intended for use under the rezoning before securing the zoning permit from the defendant as specifically prohibited under the Zoning Ordinance at Section 15-2(a)."
Section 15-2 (a) of the Zoning Ordinance provides, in pertinent part, that "[b]efore commencing the construction ... of any ... structure, ... a zoning permit for the same shall be secured from the Zoning Administrator." At the Planning Board hearing, Matt Behe stated that he had previously poured a concrete pad on the two-acre tract for use by his personal dogs. He recognized that if the rezoning were granted, the reconstruction of the pad as the foundation for the dog-training building *292 would require a permit. There is no evidence that Matt Behe, as applicant, failed to obtain or comply with all required permits and approvals. It appears, once again, that the trial court weighed the evidence instead of simply reviewing the whole record before it.
III. Conclusion
In sum, we decline to rule on whether the trial court erred in granting summary judgment in favor of plaintiff because the trial court's order and the record before us is insufficient to allow us to make that determination. Instead, we reverse the trial court's order and remand for a new summary judgment hearing. At the subsequent hearing, the trial court is to review the whole record to discern whether the BOC's zoning decision was reasonable and supported by the record. Because this case does not involve spot zoning, the burden is on plaintiff to show that the zoning change was invalid.
REVERSED AND REMANDED.
Judge CALABRIA concurs.
Judge DILLON concurs in part and dissents in part by separate opinion.

In the record, Philip is interchangeably spelled both Philip and Phillip, including in the deed to the property at issue. We spell it "Philip" in this opinion.